UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**ROBERT O'DAY, on his own behalf
and others similarly situated**

    **Plaintiff,**

v.                                                        Case No: 5:23-cv-59-GAP-PRL

**INVESTMENT AT LAKE DIAMOND,
LLC,**

    **Defendant.**

### REPORT AND RECOMMENDATION[1]

Before the Court, upon referral, is the plaintiff's motion for conditional class certification under 29 U.S.C. § 216(b). (Doc. 7). Defendant has filed a response in opposition at the direction of the Court. (Docs. 15 & 16). Plaintiff has filed a reply in support of his motion. (Doc. 21). For the reasons discussed below, I submit that the plaintiff's motion should be **GRANTED.**

**I.**     **BACKGROUND**

On January 24, 2023, Plaintiff, Robert O'Day, filed this action under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, and the Florida Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110, against his alleged employer, Defendant Investment at Lake Diamond, LLC ("Diamond"), to recover unpaid compensation allegedly owed to him and

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

other "cart attendants."[2] (Doc. 1). Subsequently, William Webster, who was also a cart attendant, joined this action as a Plaintiff by filing his written consent. (Docs. 7-3 & 8); *see Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) (citing 29 U.S.C. § 216(b)). In Count I, the complaint asserts a claim for failure to pay minimum wages in violation of the FLSA. In Count II, the complaint asserts a claim for failure to pay minimum wages in violation of the FMWA. Plaintiff only seeks conditional class certification as to Count I, for violations of the FLSA.

The motion for conditional class certification requests the Court to: (1) allow Plaintiff's FLSA claims to proceed as a collective action, (2) authorize the mailing of a proposed notice to all similarly situated individuals currently or formerly working without wages at the Lake Diamond Golf & Country Club in Ocala, Florida at any time from January 24, 2020, to the present as a golf cart attendant, ranger, range picker, or starter; (3) order Defendant to produce a computer readable data file containing the names, addresses, and telephone numbers of such putative collective members within eleven days of granting Plaintiff's motion; (4) order Plaintiff to mail notice to putative collective members within ten days of receiving the data file(s) from Defendant so that notice may be promptly distributed to such putative collective members; and (5) order that such putative collective members return their consents to join to Plaintiff's counsel within 60 days of the date of mailing of the notice if they wish to join as party plaintiffs.

---

[2] The term "cart attendants" includes the proposed class members who were "cart attendants, rangers, and range pickers[.]" *See, e.g.*, (Doc. 1 at ¶¶ 8, 17, 18, 20, 26, 29, 30, 32).

## II. LEGAL STANDARDS

"The FLSA authorizes collective actions against employers accused of violating the FLSA." *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008) (citing 29 U.S.C. § 216(b)). Specifically, under 29 U.S.C. § 216(b), "[a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id*. To maintain a collective action, Plaintiff must demonstrate that he is "similarly situated" to the opt-in Plaintiffs with respect to their job requirements and their pay provisions. *Dybach v. Fla. Dep't of Corrections*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). To demonstrate this, an opt-in plaintiff "need show only that their positions are similar, not identical, to the positions held by the putative class members." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).

In deciding whether to certify a collective action under § 216(b), the Court engages in a two-step analysis. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952–53 (11th Cir. 2007). First is the "notice stage," where the court decides whether notice of the action should be given to potential class members. *Hipp*, 252 F.3d at 1218 (citing *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1216 (5th Cir. 1995)).[3] In making this decision, the court must first "satisfy itself that there are other employees ... [(1)] who desire to 'opt-in' and [(2)] who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Chung v. Affordable Battery, Inc.*, Case No. 12-60612-CIV, 2012 WL 3759029, 1 (S.D. Fla. Aug. 29, 2012) (quoting *Dybach*, 942 F.2d at 1567–68). At the notice stage, the Court's certification

---

[3] The initial decision to conditionally certify and the decision to notify potential collective action members should be treated as synonymous. *Morgan*, 551 F.3d at 1261 n.40.

decision is based primarily on pleadings and affidavits, applying a "fairly lenient standard" in determining if the plaintiffs are similarly situated. *Anderson*, 488 F.3d at 953.

If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." *Id*. The action then proceeds as a representative action throughout discovery. *Id*. The second stage usually occurs at the end of discovery upon the defendant's motion for decertification of the class. *Id*. At this second stage, the Court has much more information to base its decision on and makes a factual determination on the similarly situated question. *Id*. If the claimants are similarly situated, the district court allows the representative action to proceed to trial; and if not, the district court decertifies the class, the opt-in Plaintiffs are dismissed without prejudice, and the original Plaintiffs proceed to trial on their individual claims. *Id.*

### III.  DISCUSSION

At the notice stage, Plaintiff must show that other employees desire to "opt-in" and are "similarly situated." *Dybach*, 942 F.2d at 1567–68. The named Plaintiff must show only a "reasonable basis" for their claim that there are other similarly situated employees. *Morgan*, 551 F.3d at 1260. Although the standard is "fairly lenient" and "flexible," Plaintiff must offer more than counsel's unsupported assertions. *Id.* At the notice stage, courts refuse to review the action's underlying merits. *Pares v. Kendall Lakes Auto., LLC*, No. 13-20317-CIV, 2013 WL 3279803, at *3 (S.D. Fla. June 27, 2013).

#### A. *The Employment-Relationship*

As an initial matter, Diamond argues that the motion should be denied because the plaintiffs were volunteers and as such fail to establish the employment relationship necessary to state a claim for relief under the FLSA. Indeed, the instant motion uses the term

"volunteers" in reference to putative class members and William Webster's declaration uses the term "volunteer[.]" *See, e.g.*, (Doc. 7 at 12 & Doc. 7-3 at 1). However, under the FLSA, the labels that the parties use fail to govern the employment relationship. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013).

Importantly, at the notice stage, courts usually refrain from determining the existence of an employment relationship, reserving the determination for, *inter alia*, motions to dismiss, motions for summary judgment, and the second "decertification" stage. *See Jackson v. Fed. Nat'l Mortg. Ass'n*, 181 F. Supp. 3d 1044, 1052 (N.D. Ga. 2016) ("The focus of the court's inquiry at this stage is not on whether there has been an actual violation of law, but on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated.") (citing *Kreher v. City of Atlanta*, No. 1:04–cv–2651–WSD, 2006 WL 739572, at *4 (N.D. Ga. Mar. 20, 2006)); *see also Fernandez v. City of Fruitland Park*, No. 5:16-CV-326-OC-34PRL, 2016 WL 8329400, at *3 (M.D. Fla. Dec. 6, 2016), *report and recommendation adopted*, 2017 WL 735390 (M.D. Fla. Feb. 24, 2017) (finding plaintiff, rather than being "mere volunteer[,]" sufficiently alleged existence of employment relationship to overcome motion to dismiss for failure to state a claim); *see also White v. Subcontracting Concepts, Inc.*, No. 8:08-CV-620-T30TGW, 2008 WL 4925629, at *2 (M.D. Fla. Nov. 14, 2008) (stating, at notice stage, that "[p]laintiff's employment relationship with [d]efendants, as well as whether any violation by [d]efendants was willful, are factual issues better addressed at the summary judgment stage.").

Finally, even if the Court were to address the employment relationship at the notice stage, it appears that the complaint sufficiently alleges facts to demonstrate that the cart attendants were employees, rather than volunteers. A volunteer is "[a]n individual who,

'without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit[.]'" *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985) (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)); *see* 29 C.F.R. § 553.101 (defining volunteer as "[a]n individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered"). To ascertain whether an individual is a volunteer, courts look at the "economic reality" of the relationship, considering "circumstances of the whole activity." *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (citations omitted); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *Tony & Susan Alamo Found.*, 471 U.S. at 301. Here, notably, the complaint alleges that in addition to golf privileges, Diamond "had a policy and practice of attempting to use **tips paid by customers**" as a pay substitute. (Doc. 1 at ¶ 30) (emphasis added); *cf. Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761, 767 (6th Cir. 2018) (finding church restaurant waiters were volunteers where they "neither expected nor received any wages or in-kind benefits in exchange for their service. They were not even allowed to accept tips from customers."). Hence, at the notice stage, the complaint appears to sufficiently allege that the cart attendants were employees, because they undertook the position expecting compensation (in the form of golf privileges).

### B. The Employees are Substantially Similar

Next, for purposes of defining the "similarly situated class," Plaintiff only needs to show that the defined class is comprised of representatives who are similarly situated to him with respect to their "job requirements and pay provisions." *See Dybach*, 942 F.2d at 1568. In determining whether Plaintiffs have met their burden, courts consider (1) whether the

plaintiffs held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; and (5) the extent to which the actions the plaintiffs claim constitute violations are similar. *Gonzalez v. Winn-Dixie Stores, Inc.*, No. 14-20792-CIV-ALTONAGA, 2014 WL 4665468, at * 3 (S.D. Fla. Sept. 18, 2014) (citations omitted).

Here, first, the complaint alleges that the named Plaintiff, O'Day, and all similarly situated cart attendants, rangers, and range pickers held essentially the same job title ("cart attendant"), at the same location, and were due an hourly wage. (Doc. 1 at ¶¶ 11, 15, 17–23, 25). Like O'Day's declaration, Webster's declaration represents that the position of cart attendant encompassed several volunteer positions "including starter, ranger, cart attendant, and range ball picker." (Doc. 7-2 at ¶¶ 3–6; Doc. 7-3 at ¶¶ 2–4, 7; & Doc. 8-1 at ¶¶ 2–4, 7). Second, the complaint alleges that the plaintiffs all worked at Lake Diamond Golf & Country Club in Ocala, Florida. (Doc. 1 at ¶ 20). Third, the complaint alleges that Diamond failed to pay cart attendants direct wages for the last five years, and the proposed class is limited to those individuals working without wages after January 24, 2020. (Doc. 1 at ¶ 11). Here, O'Day represents that he has been working for Diamond since September 2022 (Doc. 7-2 at ¶ 2), and Webster represents that he worked for Diamond from about April 2019 to May 2021. (Doc. 7-3 at ¶ 1).

Fourth, the complaint alleges that Plaintiffs were subjected to the same illegal policies and practices, *i.e.*, Diamond failed to pay any direct wages to O'Day and other similarly situated employees. (Doc. 1 at ¶¶ 8–12, 20, 24). Instead of wages or other monetary

compensation, according to the declarations of O'Day and Webster, Diamond allowed cart attendants to "play golf without charge in exchange for working two shifts per week. . . . [and] to use the driving range without charge." (Doc. 7-2 at ¶ 7).

Accordingly, I submit that Plaintiffs have shown that there are other employees who are "similarly situated."

### C. Other Individuals Seek to Join the Suit

Further, Plaintiff must demonstrate "a reasonable basis" for the assertion that there are other employees who desire to opt-in. *Haynes v. Singer Co.,* 696 F.2d 884, 887 (11th Cir. 1983); *Ramos v. Burger King Corp.,* No. 8:11-CV-642-T-30MAP, 2011 WL 4634024, at *1 (M.D. Fla. Oct. 6, 2011). This burden is not onerous, *Alequin v. Darden Rest., Inc.,* No. 12–61742–CIV, 2013 WL 3939373, at *4 (S.D. Fla. July 12, 2013), "even one opt-in notice can be sufficient to meet the first requirement for conditional certification, and courts in this district have conditionally certified classes with just one." *White v. SLM Staffing LLC*, No. 8:16-CV-2057-T-30TBM, 2016 WL 4382777, at *2 (M.D. Fla. Aug. 17, 2016) (citation omitted); *Lemming v. Security Forces, Inc.*, No. 8:10-cv-1469-T-26AEP, 2010 WL 5058532, at *1 ("[t]he number of plaintiffs necessary to demonstrate a desire to opt in is not many, sometimes as few as two, three, or four."). "Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees." *Rodgers v. CVS Pharmacy, Inc.,* No. 8:05-CV770T-27MSS, 2006 WL 752831, at *3 (M.D. Fla. Mar. 23, 2006) (citing *Davis v. Charoen Pokphand (USA), Inc.,* 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004)).

Here, it appears that the plaintiff has demonstrated a reasonable basis for asserting that other employees desire to opt-in, as Mr. Webster's consent to join the suit raises the plaintiff's

contention beyond one of pure speculation. (Docs. 7-3 & 8); *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV-MARTINEZ/LYNCH, 2006 U.S. Dist. LEXIS 58484, at *10 (S.D. Fla. May 17, 2006) (finding affidavit of plaintiff and co-worker sufficiently showed that other employees desired to opt-in); *Brown v. Refuse Materials, Inc.*, No. 7:13-CV-37 HL, 2013 WL 2387750, at *3 (M.D. Ga. May 30, 2013) (one consent to join sufficient); *Blake v. Batmasian*, 197 F. Supp. 3d 1367, 1374 (S.D. Fla. 2016) (Plaintiff "met the lenient standard for conditional certification, even though he has only one proposed opt-in."). O'Day's declaration, and Webster's consent to join, seem sufficient given that Plaintiff is not seeking to certify a broad or nationwide class, instead seeking "certification of a local class of golf course 'volunteers'[.]"[4] (Doc. at 3–4); *see Rappaport v. Embarq Mgmt. Co.*, No. 607CV468ORL19DAB, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007) (noting that federal courts in this District and the Southern District of Florida "routinely den[y] requests for conditional certification where . . . plaintiffs attempt to certify a broad class based only on the conclusory allegations of few employees.") (collecting cases). Accordingly, I submit that O'Day's declaration and Webster's consent to join the lawsuit are sufficient to show that other employees desire to opt-in to the lawsuit.

Accordingly, I recommend that the Court **grant** the motion for conditional certification of the FLSA class.

### D. *Mailing the Proposed Notice*

Next, Defendant argues that the proposed "notice must be tailor [sic] to avoid the distribution of 'misinformation' such as that the [d]efendant acted 'willfully' or with 'reckless

---

[4] The motion for conditional certification omits the number of similarly situated employees eligible to join the putative class. However, given that the class encompasses about a three-year period and O'Day and Webster represent that the defendant has about seven to eight cart attendants at a time, the Court presumes that there are less than a hundred potential class members. *See* (Doc. 7-2 at ¶ 5; Doc. 7-3 at ¶ 9).

disregard.'" (Doc. 16 at 8). Further, Defendant wants the notice "limited to a two year [sic] lookback, based on the applicable 2-year statute of limitations, . . . because there is no evidence of any 'willful violation on behalf of an employer' that would trigger a longer period." *Id.* at 9. Defendant makes these arguments without the benefit of supporting legal authority, and I find them unavailing.

As discussed above, courts decline to address arguments like the willfulness of an FLSA violation at the notice stage. *See White*, 2008 WL 4925629, at *2; *see also Abdul-Rasheed v. KableLink Commc'ns, LLC*, No. 8:13-CV-879-T-24, 2013 WL 5954785, at *4 (M.D. Fla. Nov. 7, 2013) (holding that defendant could raise its arguments about willfulness of violations and appropriate limitations period in a motion for decertification or a motion for summary judgment). Further, the proposed notice only mentions "willfulness" once—"Federal law . . . requires that any claims for minimum wage compensation must be filed . . . within three years if the violation was willful as defined by law[.]" (Doc. 7-1 at ¶ VIII). Hence, it appears that this notice is "balanced, informative," and omits any "misinformation" as to the alleged willfulness of defendant's purported actions. (Doc. 16 at 8–9).

Finally, I submit that a three-year lookback period is permissible because the complaint alleges that the FLSA was willfully violated. (Doc. 1 at ¶ 33); *Abdul-Rasheed*, 2013 WL 5954785, at *3–4 (Plaintiff's allegation that defendants willfully violated FLSA sufficient at the notice stage to support his request for a three-year period in notice); *see also Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1242 n.33 (S.D. Ala. 2008).

Accordingly, I recommend that the Court **grant** Plaintiff's request for the defendant to produce a computer readable data file containing the names, addresses, and telephone numbers of such putative collective members within eleven days of granting his motion. *See*

*Sutton v. Premium Car Wash*, No. 6:12-cv-1254-Orl-28TBS, 2013 WL 2474416, at *2 (M.D. Fla. June 10, 2013) (ordering defendants to deliver to plaintiff's counsel a list of full names and known addresses for putative class members working for defendant for three-year period); *see White*, 2008 WL 4925629, at *3 (same, and requiring defendants to produce "Social Security Numbers" of putative class members).

Likewise, I recommend that the Court **grant** Plaintiff's requests for ordering: (1) him to mail notice to putative collective members within ten days of receipt of the data file(s) from Defendant; and (2) putative collective members return their consents to join to Plaintiff's counsel within 60 days of the date of mailing of the notice if they wish to join as party plaintiffs. *See Sutton*, 2013 WL 2474416, at *1–2.

### IV. CONCLUSION

Accordingly, for the foregoing reasons, I recommend that the plaintiff's motion to facilitate notice be **GRANTED**.

Recommended in Ocala, Florida on April 21, 2023.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy