UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 5:23-cv-00059-GAP-PRL

ROBERT O'DAY and WILLIAM
WEBSTER, on their own behalf
and others similarly situated,

      Plaintiffs,

vs.                                                    **COLLECTIVE ACTION**

INVESTMENT AT LAKE
DIAMOND, LLC, a Florida
Limited Liability Company, d/b/a
Lake Diamond Golf & Country
Club,

      Defendant.
_____/

**JOINT MOTION TO APPROVE SETTLEMENT AND DISMISS CASE
WITH PREJUDICE AND INCORPORATED MEMORANDUM OF LAW**

      Plaintiffs and Defendant INVESTMENT AT LAKE DIAMOND, LLC

("Defendant"), by their undersigned attorneys, hereby notify the Court that the parties

have resolved this matter and all claims raised herein and move to dismiss this action

with prejudice pursuant to Fed. R. Civ. P. 41(a)(2). As some claims in the lawsuit arose

under the Fair Labor Standards Act ("FLSA"), the parties' settlement must be approved

by the court. Accordingly, the Parties further move the Court to approve the settlement

of the FLSA claims. The parties' Settlement Agreements, resolving both the FLSA

claims and the Florida Minimum Wage Act ("FMWA") claims, including claims of opt-

in plaintiffs, are attached as Composite Exhibit A. This motion is supported by the

record in this matter, by the stipulated facts stated below, and by the Memorandum of Law that is incorporated into this motion.

## FACTUAL BACKGROUND

1.    Plaintiff Robert O'Day (O'Day) commenced this action by filing a collective action Complaint on January 24, 2023. (ECF 1)

2.    Plaintiff O'Day filed a Motion to Facilitate Notice pursuant to 29 U.S.C. § 216(b) on February 14, 2023. (ECF 7)

3.    On March 15, 2023, the Defendant filed its Response in Opposition to Plaintiffs' Motion to Faciliate Notice pursuant to 29 U.S.C. § 216(b). (ECF 16)

4.    Plaintiffs O'Day and Webster filed Answers to the Court's Interrogatories on April 5, 2023. (ECF 19 and 20)

5.    On April 7, 2023, the Plaintiffs filed a Reply Memorandum to Defendant's Response to Motion to Facilitate Notice pursuant to 29 U.S.C. § 216(b). (ECF 21)

6.    On April 21, 2023, the Honorable Magistrate Judge Philip R. Lammens recommended that Plaintiffs' Motion to Faciliate Notice pursuant to 29 U.S.C. § 216(b) be granted. (ECF 22)

7.    On May 15, 2023, this Court Confirmed and Adopted Magistrate Judge Lammens' Report and Recommendation to grant Plaintiffs' Motion to Faciliate Notice pursuant to 29 U.S.C. § 216(b). (ECF 24).

8.    On June 30, 2023, Plaintiffs filed their Motion for Leave to Contact Putative Collective Members and Supporting Memorandum of Law.

9.      Plaintiff filed a First Amended Complaint on July 5, 2023. (ECF 40) The Complaint alleged violations of 29 U.S.C. § 206 based on the Defendant's alleged failure to pay minimum wage compensation to O'Day and similarly situated employees. The Complaint also alleged violations of the Florida Minimum Wage Act. Although opt-in Plaintiff William Webster had previously filed a Notice of Consent to Join on February 15, 2023, technically he was not a party plaintiff with regard to the FMWA claims. The First Amended Complaint added Plaintiff Webster as a party plaintiff.

10.     On June 30, 2023, Plaintiffs filed their Motion for Leave to Contact Putative Collective Members and Supporting Memorandum of Law. (ECF No. 36)

11.     On July 10, 2023, Defendant filed its Limited Objection to Plaintiff's Motion for Leave to Contact Putative Collective Members. (ECF No. 41)

12.     On July 13, 2023, the Honorable Magistrate Judge Philip R. Lammens granted Plaintiffs' Motion for Leave to Contact Collective Members (ECF No. 42)

13.     On July 19, 2023, the Defendant filed an Answer and Affirmative Defenses to the First Amended Complaint. The Defendant essentially denied liability as to all claims on the premise that Plaintiffs were volunteers and not entitled to wages. (ECF 45)

14.     Thereafter, court-approved notices were mailed out to potential opt-in plaintiffs, resulting in five (5) additional plaintiffs filing Notices of Consent to Join forms.

15.     The parties engaged in discovery, both formal and informal. Both before and after the completion of discovery, the parties engaged in extensive and prolonged settlement negotiations. The parties have exchanged sufficient information to allow them

to make informed decisions regarding settlement. Ultimately, the parties were able to resolve this matter.

16.     The Plaintiffs and Defendant are independently represented by counsel with extensive experience in the litigation of FLSA claims. Both counsel acknowledge that they have a duty to vigorously represent their clients and advise the Court that they have done so in this case.

17.     The terms of the settlement are stated in the Settlement Agreements attached as Composite Exhibit A. The Settlement Agreements are provided to the Court to comply with the Order entered on November 7, 2023 directing the parties to file their settlement agreement and joint motion for approval by November 22, 2023. (ECF 58) The parties now ask this Court to review the Settlement Agreements and to approve the terms of the settlement as a fair and reasonable settlement of disputed claims.

18.     The total amount the Defendant will pay to settle all claims is $165,500.00. Of that amount, $125,500.00 (less appropriate withholdings for the portion of the settlements deemed wages) will be paid to the Plaintiffs to resolve their claims and $40,000 will be paid to Plaintiffs' counsel for reasonable attorney's fees and litigation costs. Those payments will be made within 10 days of settlement approval. The attorney's fees and litigation costs were negotiated separately in accordance with *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222 (M.D. Fla. 2009).

4

19.    The settlement provides payments using the following framework:

| | | Pro Rata Division of 120,900 | Wages (1/2) (*less withholding) | Liq. Damages (1/2) | $300 Each for Gen. Release | "Service Payment" | Total Per Plaintiff |
|---|---|---|---|---|---|---|---|
| Bouker | 0.129 | $ 15,596.10 | $ 7,798.05 | $ 7,798.05 | $ 300.00 | | $ 15,896.10 |
| O'Day | 0.051 | $ 6,165.90 | $ 3,082.95 | $ 3,082.95 | $ 300.00 | $ 2,500.00 | $ 8,965.90 |
| Sansone | 0.212 | $ 25,630.80 | $ 12,815.40 | $ 12,815.40 | $ 300.00 | | $ 25,930.80 |
| Sims | 0.212 | $ 25,630.80 | $ 12,815.40 | $ 12,815.40 | $ 300.00 | | $ 25,930.80 |
| Webster | 0.158 | $ 19,102.20 | $ 9,551.10 | $ 9,551.10 | $ 300.00 | | $ 19,402.20 |
| Williams | 0.212 | $ 25,630.80 | $ 12,815.40 | $ 12,815.40 | $ 300.00 | | $ 25,930.80 |
| Zielinski | 0.026 | $ 3,143.40 | $ 1,571.70 | $ 1,571.70 | $ 300.00 | | $ 3,443.40 |
| Totals: | 1.000 | $ 120,900.00 | 120,900.00 | | $ 2,100.00 | $ 2,500.00 | $125,500.00 |

20.    It is important to note that the above settlement amounts are compromised. During negotiations, the total number of hours claimed by each Plaintiff and Opt-in (hereinafter, "Participating Plaintiffs") were added together, which resulted in a pro rata amount of the settlement that each Plaintiff and Opt-in would be entitled to. The number of hours for each Participating Plaintiff were derived by recreating schedules (days and times worked) based substantially on each Participating Plaintiff's recollection of the same because none of the parties maintained any detailed time records or schedules. The manner in which the negotiations were conducted were such that reductions of the Participating Plaintiffs' settlement demands were made to their respective claims for liquidated damages. The ultimate settlement that was reached encompasses a ***100%*** ***recovery*** of the Participating Plaintiffs' alleged unpaid minimum wages (which were computed by multiplying the total alleged hours times the applicable minimum wage rates), plus approximately 18.5% of the Participating Plaintiffs' alleged claims for liquidated damages, resulting in a compromise on the liquidated damages claim. However, from a tax treatment perspective and to present the typical equal split between

wages and liquidated damages that occur in many FLSA settlements, the parties agreed to allocate 50% as wages and 50% as liquidated damages.

In actions for unpaid minimum wages under the FLSA, there is a two (2) year statute of limitations, or three (3) years for willful violations. Because the FMWA provides for a four (4) year statute of limitations (5 years for willful violations), for the purposes of a negotiated settlement, each Participating Plaintiff's hours were calculated based on the ___full five (5) year statute of limitations___.  In essence, as a negotiated resolution, considering the Defendant's adamant position that *if* there had been violations, those violations were *not willful*, each Participating Plaintiff is still recovering minimum wages for the past five years. Accordingly, the settlement model utilized during negotiations resulted in a substantial recovery for each Participating Plaintiff, despite the characterization of the payments being made in the above chart.

21.    The attorney's fee payment does not diminish the FLSA recovery of the plaintiffs as is discussed in more detail below. Counsel for both parties agree and acknowledge that the amount separately negotiated for attorney's fees and costs is reasonable and not excessive.

22.    Although the Defendant has disputed the amount of unpaid minimum wages alleged by the Plaintiffs and has alleged that its own evidence would prove that fewer hours were worked or volunteered by each Plaintiff,  and that if there had been violations, those violations were not willful, the parties have nevertheless agreed to resolve those disputed facts with a settlement that fully compensates each Plaintiff on their estimated hours for the entire five year limitations period. No information revealed

in discovery suggested that the actual work or volunteer hours were greater than the estimated hours that were agreed upon.

23.    In exchange for the settlement proceeds, Plaintiffs agreed to dismiss the claims brought in the First Amendment Complaint. The parties stipulate that they have a bona fide dispute and that they are resolving the matter in order to avoid the cost and time of litigating the issues, as well as the risks associated with continued litigation. The parties stipulate that the settlement represents a reasonable compromise of disputed issues. Counsel for both parties represent that the settlement entered into by the parties was an arms-length compromise and there was no collusion with regard to the settlement of this matter. The parties are satisfied that the amounts to be paid by the Defendant to the Plaintiffs constitute a fair and reasonable resolution of the claims made in this action.

24.    Counsel for the parties also represent that the continuation of this litigation would necessitate further expense causing additional expenditures of costs and attorney's fees.

25.    Because attorney's fees and costs were negotiated separately and after the Plaintiffs' underlying wage claims were resolved, the Plaintiffs' attorney is not submitting time records with this motion but is prepared to produce those records if the Court believes that a review of time records is necessary. Plaintiff's counsel represents that he has devoted approximately 103.4 hours to the prosecution of the claims stated in the Complaint and First Amended Complaint, including client interviews and investigation, legal research, preparation of pleadings, discovery, and settlement negotiations.

26.    The parties jointly ask the Court to determine that the settlement terms are fair, reasonable and adequate, to approve the settlement, and to enter an Order of Dismissal with Prejudice in this action.

## MEMORANDUM OF LAW

The FLSA requires covered employees to pay minimum wage compensation to nonexempt employees. 29 U.S.C. § 206. Unless the Department of Labor supervises the payment of unpaid minimum wages, judicial review and approval of a settlement of minimum wage claims is necessary to give the settlement final and binding effect.  *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor,* 679 F.2d 1350 (11th Cir. 1982). Before approving an FLSA settlement, the Court must "scrutinize[e] the settlement for fairness." *Id.* at 1353. The Court may approve the settlement after determining that it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Id*. at 1355.

Courts recognize that a "settlement entered into in an adversarial context where both sides are represented by counsel throughout litigation 'is more likely to reflect a reasonable compromise of disputed issues'." *Furfari v. All-Embraced LLC,* No. 21-21100-CIV-COOKE/O'SULLIVAN, at *1 (S.D. Fla. June 18, 2021) (quoting *Lynn's Food,* 679 F.2d at 1354). Approving a settlement "promote[s] the policy of encouraging settlement of litigation." *Id.* In addition, "[t]he Court should be mindful of the strong presumption in favor of finding a settlement fair." *Barnett v. Melbourne Beach Supermarket, Inc.,* No. 6:22-cv-001-ACC-GJK, at *3 (M.D. Fla. Jan. 27, 2022).

### A.    The settlement resolves a bona fide dispute over FLSA/FMWA claims

The Defendant denies that the Plaintiffs were employees and that they are entitled to any wages and that if any wages are due, that the Plaintiffs received benefits that would offset any entitlement to wages. Furthemore, Defendant contended that, if Plaintiffs were entitled to wages, the amounts that were claimed were not in line with what the evidence would show if the case proceeded to trial. Lastly, the Defendant contended that it acted in good faith such that Plaintiffs would not be entitled liquidated damages or their reasonable attorney's fees and costs.

Since the Plaintiffs did not maintain their own contemporaneous written records of their alleged hours worked, the dispute about hours worked has been resolved by accepting the Plaintiffs' estimate of their uncompensated hours. The settlement resolves the dispute by providing each Plaintiff with the full unpaid minimum wage compensation that has been estimated for the last five (5) years, plus an additional sum for liquidated damages (approximately 18.5% of liquidated damages) and separate consideration for a general release.

### B.    The Settlement is Fair and Reasonable

The Plaintiffs are receiving the full amount of unpaid minimum wages that they have estimated.  "When a plaintiff receives all past due compensation to which he was arguably entitled under the FLSA, the settlement is fair." *Crooms v. Lakewood Nursing Center, Inc.,* No. 3:07-cv-435-J-32TEM, at *2 (M.D. Fla. Feb. 12, 2008) (citation and internal quotation marks omitted). By definition, the settlement is fair and reasonable because it gives the Plaintiffs a full FLSA/FMWA remedy (plus an additional remedy for their liquidated damages claims). *See Powers v. Brambles Indus., Inc.*, No. 6:14-cv-1216-

Orl-40GJK, at *3 (M.D. Fla. Apr. 27, 2015) ("where a plaintiff is receiving full compensation, including wages and liquidated damages, possibly due under the FLSA, the settlement is necessarily fair and there is no need to further scrutinize it").

In the context of a settlement under the FLSA, the Court considers the following factors to determine whether an FLSA settlement is fair and reasonable: "(1) the possible existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." *Morales v. Runway 84, Inc.,* No. 20-CV-61794-SMITH/VALLE, at *1 (S.D. Fla. Oct. 9, 2020) (citing *Leverso v. S. Trust Bank of Ala. Nat. Assoc.,* 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). Each factor supports the conclusion that the settlement is reasonable.

> 1.    Collusion

The parties represent that they reached a settlement of disputed claims, after good faith, arm's length negotiation. The settlement is not the product of collusion. In fact, the total settlement of $125,500.00 (plus attorney's fees and costs) represents a substantial recovery for disputed claims.

When parties are independently represented by experienced counsel who agree that a settlement is fair and reasonable, who acknowledge their duty to represent their clients vigorously, and who represent that they have done so, collusion is unlikely. *Robinson v. Anytime Rentals, Inc.,* No: 2:14-cv-528-FtM-38CM, at *4 (M.D. Fla. Apr. 13, 2016). Here, the parties were independently represented by experienced counsel who

have acknowledged their obligation to represent their clients vigorously, who have done so, and who believe that they have reached a fair and reasonable settlement.

2.    Complexity, expense, and likely duration of litigation

The FLSA/FMWA issues in this case are not legally complex, but resolving the factual disputes in the absence of a settlement would necessitate a trial and require the testimony of several witnesses. The additional time and expense required to bring witnesses to court and to resolve this matter at trial would have resulted in significant expense for both parties that a settlement avoids.

3.    Stage of proceedings and amount of discovery required

The parties essentially completed their investigation and discovery before engaging in final settlement negotiations. Both parties were able to review all relevant evidence that is still in existence. That investigation and discovery made it possible for the parties to negotiate with a full understanding of the evidence and of the strengths and weaknesses of their respective positions.

4.    Probability of Plaintiffs' success

A jury would need to weigh the credibility of the Plaintiffs' testimony and the reliability of their memories, subject to cross examination when deciding whether the Plaintiffs established (1) FLSA/FMWA violations and (2) the number of hours they worked or volunteered without compensation. While the outcome of litigation is always uncertain, there is no reason to believe that the Plaintiffs would recover more at a trial of their FLSA/FMWA claims than they are receiving in the settlement. Neither party has

11

reason to believe that the Plaintiffs would have obtained a better recovery of unpaid minimum wages by going to trial.

> 5.    Range of possible recovery

Based on Plaintiffs' estimation of minimum wages and the similarly situated nature of the opt-in Plaintiffs, the maximum recovery for each Plaintiff would have been the amount of their collective estimations, plus an equal amount for liquidated damages. The minimum recovery would have been a defense verdict (zero) if the jury believed that the Defendant's interpretation of the law was accurate (i.e., that the Plaintiffs were volunteers, not employees).

> 6.    Opinions of counsel

All parties are represented by capable counsel who have extensive experience with FLSA/FMWA cases. Both counsel represent that, in their opinion, the settlement is fair and reasonable.

In short, all relevant factors support a finding that the settlement is fair and reasonable. No facts or circumstances of this case overcome "the strong presumption in favor of finding a settlement fair." *Barnett,* No. 6:22-cv-001-ACC-GJK, at *3.

**C.    The Payment of attorney's fees and costs is reasonable, although the court need not review the fee award**

The FLSA requires the award of attorneys' fees to a prevailing employee. *Dale v. Comcast Corp.,* 498 F.3d 1216, 1223 n. 12 (11th Cir. 2007). In many cases, the Court must "review . . . the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged

employee recovers under a settlement agreement." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1243 (M.D. Fla. 2010).

Judicial review of fees is designed "to protect the interests of employees." *Mejia v. Commercial Driver's License Sch., Inc.*, Case No.: 1:20-cv-20575-KMM, at *8 (S.D. Fla. Feb. 9, 2021). In particular, review of an attorney's fee is driven by the need to protect employees who do not receive a full recovery. "When a plaintiff receives less than a full recovery," courts review the attorney's fee because "any payment (whether or not agreed to by a defendant) above a reasonable fee improperly detracts from the plaintiff's recovery." *Gonzalez v. Car Wash Headquarters, Inc.*, No. 6:18-cv-504-Orl-40GJK, at *4 (M.D. Fla. Dec. 13, 2018).

Thus, a potential conflict can arise between counsel and their client regarding how much of the plaintiff's total recovery should be allocated to attorney's fees and costs. It is the Court's responsibility to ensure that any such allocation is reasonable. See *Silva*, 307 F. App'x at 351-52. In doing so, the Court uses the lodestar method for guidance. *See Comstock v. Fla. Metal Recycling, LLC*, 2009 WL 1586604, at *2 (S.D. Fla. June 5, 2009). "As the Court interprets the Lynn's Food and Silva cases, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorney's fees provision under the parties' settlement agreement using the lodestar method as a guide." *Monserrate v. Hartford Fire Ins. Co.*, Case No: 6:14-cv-149-Orl-37GJK, at *6 (M.D. Fla. Sep. 22, 2016)

Here, the parties first reached a compromised settlement regarding the Plaintiffs' contested underlying minimum wage claims for $120,900, plus separate consideration of

$300 per Plaintiff for a general release, and an additional $2,500 service award for Plaintiff Robert O'Day, totaling $125,500. The first phase of the parties' settlement also included an additional unspecified amount for Plaintiffs' reasonable attorney's fees and costs to be separately negotiated by the parties, and if not, presented to this Court for determination.

Thereafter, the parties separately negotiated an amount to be paid (over and beyond Plaintiff's underlying minimum wage claims) for Plaintiffs' reasonable attorney's fees and costs. In arriving at this amount, Plaintiffs' counsel presented detailed time records to Defendant's counsel, resulting in a second negotiation, which was ultimately resolved by counsel without the need for this Court to determine the same. Thus, respective counsel resolved the issue of attorney's fees and costs by negotiating an amount that was based on the principles of a lodestar calculation. Accordingly, the Plaintiffs' recoveries were not compromised by the deduction of attorney's fees, costs or expenses pursuant to a contract between the plaintiff and his or her counsel.

As an additional justification for this Court to find the separately negotiated attorney's fees and costs to be reasonable, this Court, in *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222 (M.D. Fla. 2009) held:

> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court

will approve the settlement without separately considering the
reasonableness of the fee to be paid to plaintiff's counsel.

*Bonetti*, 715 F. Supp. 2d at 1228 (emphasis added).

This Court maintained that if the matter of attorney fees "[is] addressed

independently and seriatim, there is no reason to assume that the lawyer's fee has

influenced the reasonableness of the plaintiff's settlement. *Id.* For these reasons, this

Court should find the agreed upon attorney's fees and costs to be reasonable.

> **D.    The General Release Does Not Require Rejection of the Settlement Agreement**

Although the parties' settlement agreements provide the Defendant and non-

parties a general release of claims, there is separate consideration for this provision.

(ECF 59-1, p. 1 and p.3, paragraph 3 of the Settlement Agreements). Some courts have

found such releases to be impermissibly overbroad when they extend beyond the named

Defendant as does the release in this case. *See Arguelles v. Noor Baig, Inc.*, 6:16-cv-2024-

Orl-37TBS, 2017 U.S. Dist. LEXIS 26024, at *3 (M.D. Fla. Feb. 24, 2017) ("a general

release may not be used to release a non-party."). However, where the other entities fall

"within the definition of 'employer' in 29 U.S.C. § 216(b), [the release] would not be

overbroad[.]" *See Beard v. Steak N Shake Operations, Inc.*, No. 6:16-cv-1154-Orl-41TBS,

2017 U.S. Dist. LEXIS 223490, at *12 (M.D. Fla. Nov. 3, 2017). Here, the release

extends to individuals and entities that could fall within the definition of employer. In

fact, prior to reaching a resolution in this matter, the Plaintiffs filed a Motion to Amend

the First Amended Complaint to include certain individuals and entities who arguably fit

within the FLSA's definition of employer. (ECF 54). *See Langellier v. Brevard Extraditions*

*Inc.*, No. 6:19-cv-1316-Orl-37EJK, 2021 U.S. Dist. LEXIS 63119, at *8-9 (M.D. Fla. Mar. 30, 2021) (recommending approving release covering nonnamed individuals that could be considered joint employers).

Courts have also found broad releases as "'side deals' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1351-52 (M.D. Fla. 2010).

In this District, Courts have approved FLSA settlements with broad releases where the Plaintiff received less than full compensation for his FLSA claim if there was an exchange of independent separate consideration. *See Buntin v. Square Foot Management Company*, LLC, No. 6:14-cv-1394-Orl-37GJK, 2015 WL 3407866, at *3 (M.D. Fla. May 27, 2015) (approving FLSA settlement where independent consideration, separate from that owed under FLSA, was exchanged, specifically a mutual general release and neutral employment reference).

In this case, the Plaintiffs are receiving 100% of their alleged FLSA/FMWA wage claims, approximately 18.5% of their claim for liquidated damages, and an additional $300.00 for the broad general release. (ECF 59-1, paragraph 1.C. of the Settlement Agreements). *See Dombroski v. Pals All Tune 2, Inc.*, 5:22-cv-78-GAP-PRL (M.D. Fla. Oct 17, 2022) (approval of broad release supported by separate consideration of $300); *report and recommendation adopted, Dombroski v. Pals All Tune 2, Inc.*, 5:22-cv-78-GAP-PRL (M.D. Fla. Nov. 2, 2022). Because the broad and general releases that might otherwise

cause an FLSA settlement to be rejected are supported by separate consideration, it is not necessary for the Court to strike those provisions from the settlement agreement.

**E.    The service award for Plaintiff Robert O'Day is reasonable, warranted and should be approved**

Judges have approved service fees for individuals who perform substantial services for the benefit of the settlement class. *See Signorelli v. Utiliquest*, *LLC*, Nos. 5:08-cv-38-OC-10GRJ, 5:08-cv-39-OC-10GRJ, 5:08-cv-40-OC-10GRJ, 2008 WL 7825757, at *2 (M.D. Fla. July 25, 2008)(approving service fees in a combined Rule 23 class action and FLSA collective action for individuals "who performed substantial services for the benefit of the Settlement Classes"); *Hosier v. Mattress Firm*, *Inc.*, No. 3:10-cv-294-J-32JRK, 2012 WL 2813960, at *5 (M.D. Fla. June 8, 2012)(and cases cited therein). *See also Dyer v. M & M Asphalt Maint. Inc.*, Case No: 6:15-cv-959-Orl-37KRS, at *13 (M.D. Fla. May 12, 2017)

From the Plaintiffs' prospective, here, Plaintiff Robert O'Day, participated in numerous phone conferences with Plaintiffs' counsel, responded to Court's interrogatories, and reviewed document requests and documents and information produced by the Defendant. In addition, Plaintiff O'Day was instrumental in assisting Plaintiffs' counsel with securing evidence, while he was still working/volunteering for the Defendant, that was helpful in strengthening the case for the other opt-ins. Furthermore, Plaintiff O'Day had the courage to bring this action and risk damage to his reputation and relationships with his co-workers, which ultimately led to his decision to voluntarily resign from his position as a cart attendant.  In summary, if not for the efforts of Plaintiff O'Day, this action would likely have never been brought to light. Simply

stated, the substantial settlement for the Participating Plaintiffs would not have happened without Plaintiff O'Day's special efforts.

## CONCLUSION

The settlement terms are fair, reasonable and adequate. Accordingly, the parties respectfully request that the Court enter an Order (i) GRANTING this Motion; (ii) APPROVING the settlement of Plaintiff's claims under the Fair Labor Standards Act and the Florida Minimum Wage Act; (iii) DISMISSING this case with prejudice; (iv) reserving jurisdiction for thirty (30) days to enforce the terms of the settlement agreement; and, (v) ORDERING such further relief as the Court deems appropriate.

Respectfully submitted on November 22, 2023,

*/s/Robert S. Norell, Esq.*
Robert S. Norell, Esq.
Fla. Bar No.: 996777
E-Mail: rob@floridawagelaw.com
**ROBERT S. NORELL, P.A.**
300 NW 70th Avenue
Suite 305
Plantation, FL 33317
Telephone: (954) 617-6017
Facsimile: (954) 617-6018
*Counsel for Plaintiffs*

*/s/Michael H. Nullman, Esq.*
Michael H. Nullman, Esq.
Fla. Bar No.: 17596
E-Mail: mnullman@nasonyeager.com
**NASON, YEAGER, GERSON,
HARRIS & FUMERO, P.A**
3001 PGA Boulevard,
Suite 305
Palm Beach Gardens, Florida 33410
Telephone: (561) 686-3307
Facsimile: (561) 686-5442
Method of Service: CM/ECF
*Counsel for Defendant*